UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
Case No. _____

| | |
|---|---|
| SL MONROE SR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE HAVEN DETOX, LLC, THE | ) |
| RECOVERY TEAM, INC., and JOANNE | ) |
| DELLUTRI, individually, | ) |
| | ) |
|    Defendants. | ) |

**COMPLAINT**
**(OPT-IN PURSUANT TO 29 U.S.C § 216(B))**

Plaintiff SL MONROE SR. ("Plaintiff") and other similarly situated individuals sue Defendants THE HAVEN DETOX, LLC ("Haven Detox") and THE RECOVERY TEAM, INC. ("Recovery Team"), (collectively the "Corporate Defendants") and JOANNE DELLUTRI ("Dellutri" or "Individual Defendant") (collectively, the "Defendants") and alleges:

**NATURE OF ACTION**

1.    This is an action to recover money damages for unpaid overtime wages and retaliatory discharge under the laws of the United States, including but not limited to the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) ("FLSA"). This is also an action to recover damages for damages arising from the Defendants' violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA") and for race discrimination and retaliation under 42 U.S.C. § 1981, as amended. In support of this Complaint, Plaintiff states as follows:

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C.

§ 201-219 (Section 216 for jurisdictional placement) ("the Act"), 42 U.S.C. § 1981, and 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 2617.

3.      Plaintiff SL Monroe Sr. is a resident of Palm Beach County, Florida, within the jurisdiction of this Honorable Court. At all times material to this Complaint, Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A); and an "employee" as defined by the FLSA, 29 U.S.C. § 203(e).

4.      Defendant Dellutri is an owner, officer, and/or director of the Corporate Defendants, and upon information and belief, resides in Palm Beach County, Florida.

5.      The Corporate Defendant Haven Detox is a limited liability company, having its main place of business in Palm Beach County, Florida, where Plaintiff worked for the Corporate Defendant Haven Detox at 1325 N Haverhill Rd, West Palm Beach, Florida 33417. At all times material hereto, Haven Detox was and is engaged in interstate commerce.

6.      The Corporate Defendant Recovery Team is a limited liability company, having its main places of business in Palm Beach County, Florida, where Plaintiff worked for the Corporate Defendant Recovery Team at 705 Linton Blvd, Delray Beach, FL 33444. At all times material hereto, Recovery Team was and is engaged in interstate commerce.

7.      The Corporate Defendants are limited liability companies duly authorized and existing under the laws of the State of Florida, conducting business in Palm Beach County, Florida.

8.      At all times material, Defendants were "employers" as defined by the FLSA, 29 U.S.C. § 203(d) and the FMLA, 29 U.S.C. § 2611(4).

9.      The Corporate Defendants share common ownership, common management, common Human Resources employees, centralized control of labor relations, and common offices

and interrelated operations. The Corporate Defendants are an integrated enterprise or an agent of each other. Alternatively, each company is an enterprise under the Act.

10.     The Corporate Defendants share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies. The Corporate Defendants are joint employers or an agent of each other. Alternatively, each company is an enterprise under the Act.

11.     Each Corporate Defendant is sued individually, as a joint enterprise, as joint employers, and as agent of each other.

12.     The Plaintiff has retained the undersigned counsel in order that his rights and interests may be protected. The Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

## GENERAL ALLEGATIONS

13.     Plaintiff, Mr. Monroe, is an African American male.

14.     At all times material, the Plaintiff worked as a Behavioral Health Technician ("BHT") for the Defendants. The plaintiff performed his work admirably and was revered by his colleagues with whom he worked.

15.     Mr. Monroe worked for the Defendants, Haven Detox and Recovery Team, from around November 2021 until his wrongful termination in or around June 2023.

16.     During all relevant times, Haven Detox promoted its company as a medical detox facility that provides assistance to individuals suffering from alcohol and drug dependence.

17.     During all relevant times, Recovery Team, promoted its company as a detox facility that provides assistance to individuals suffering from drug, alcohol and behavioral addiction.

18.     During all relevant times, the Corporate Defendants were detox facilities under Haven Health, a health management company operated by CEO Kirill Vesselov.

19.     During all relevant times, Individual Defendant Dellutri was employed by and provided managerial services to the Corporate Defendants.

20.     When the Plaintiff commenced his employment with Haven Detox in or around November 2021, he worked forty (40) hours per week, on Sunday, Monday, Thursday, Friday, and Saturday, from 7:00 am to 3:00 pm.

21.     Prior to August 2022, Plaintiff's immediate supervisor was a Black male.

22.     Prior to August 2022 Plaintiff did not have any issues with his employment.

23.     In or around August 2022, Dellutri became supervisor of all the BHTs, including Mr. Monroe.

24.     Dellutri is a White female.

25.     Shortly after becoming his supervisor, Dellutri requested that Plaintiff work additional hours at Recovery Team, and the Plaintiff agreed.

26.     In or around June 2022, Plaintiff began working at Recovery Team – when he was not working at Haven Detox – Tuesday through Saturday, from 4:00 PM to 12:00 AM.

27.     The Corporate Defendants compensated Plaintiff at a rate of $19.00 per hour.

28.     However, once Plaintiff began working for both Corporate Defendants, he averaged approximately seventy-five (75) working hours per week.

29.     Unfortunately, shortly after the Plaintiff began working at the Haven Detox facility and Recovery Team, he noticed that he did not receive proper compensation for overtime hours worked, and despite utilizing the Defendants' clock-in and clock-out system he was not paid time-and-a-half for every hour worked over 40 hours in a workweek.

30.     Plaintiff complained to the Defendants, but nothing changed, and the Corporate Defendants continued to improperly pay Plaintiff by paying him $19.00 for hours worked over 40 hours, as opposed to his proper overtime rate of $28.50 per hour. Consequently, Defendants underpaid Plaintiff by $9.50 per hour for all hours worked over 40 in a workweek.

31.     Throughout Plaintiff's employment, he performed his duties diligently and professionally. However, once Dellutri became Plaintiff's supervisor, his tenure was marred by unlawful discriminatory and retaliatory actions.

32.     Plaintiff noticed that Supervisor Dellutri exhibited discriminatory behavior towards him and other African American technicians.

33.     Plaintiff noticed that Supervisor Dellutri did not exhibit the same discriminatory treatment toward non-African American and/or non-Black employees.

34.     Plaintiff complained of Dellutri's discriminatory conduct, by reporting the various instances of discrimination to the Corporate Defendants' other managers and human resources employees.

35.     During or around August 2022, The Plaintiff also endured the distressing experience of witnessing two white patients severely assault an older African American employee. Plaintiff reported the incident and described what happened, in detail. Dellutri then went behind Plaintiff and changed his recitation of the events that transpired, so as to relieve the Defendants and the White patients of liability and any wrongdoing.

36.     Soon after he reported the altercation between the patients and the African American employee, Plaintiff distinctly recalls that supervisor Dellutri became more aggressive toward him in a discriminatory fashion and began her attempts to bring about his termination.

37.    For instance, Plaintiff complained that Supervisor Dellutri treated him  differently and would often disparage him to other employees who were not African American and to residents of Defendants' facilities. Specifically, Plaintiff was informed that, in or around August or September 2022, Supervisor Dellutri began to persistently question his co-workers and patients as to whether Mr. Monroe was performing his job and indicated that she did not believe he was performing his job well.

38.    Plaintiff further complained that he felt belittled and severely embarrassed when Dellutri would scream in the face of other African American employees, call other African American employees liars, and spread rumors about African American employees.

39.    Plaintiff noticed that Dellutri did not scream at employees who were not African American, call non-African American employees liars or spread rumors about non-African American employees.

40.    Despite reporting instances of discriminatory treatment and harassment, through numerous emails and text messages, no action was taken.

41.    Rather, Plaintiff's complaints were met with escalating retaliatory measures, including micromanagement and unwarranted disciplinary actions.

42.    Despite his numerous complaints and requests for intervention, the Defendants failed to address the hostile work environment created by Supervisor Dellutri, leading to Plaintiff's severe emotional distress, anxiety, and depression.

43.    On or about October 15, 2022, Plaintiff advised Defendants that he was experiencing anxiety and needed a mental health day to seek medical care and treatment because of the disparate treatment he was subjected to by Dellutri. Plaintiff stated directly, "it has become

very uncomfortable to say the least working with Miss JoAnne," "this continuous ordeal has taken a toll on me emotionally." Nevertheless, nothing was done.

44.     Plaintiff also requested that Defendants perform an investigation of Dellutri and stated that as an African American employee, he was targeted, bullied and subjected to a hostile work environment. Yet, the Defendants did not conduct an investigation to determine the wrongdoings or issue discipline to the bad actors.

45.     Plaintiff's pleas for investigation and intervention were disregarded, and instead, he faced further retaliation, destroying his previously unblemished employment record.

46.     After the Plaintiff complained in September 2022 and October 2022, he was retaliated against and issued verbal warnings and write-ups. Prior to Plaintiff's September 2022 email regarding Dellutri, he had never received a verbal warning or write-up during his employment with Defendants.

47.  Plaintiff noticed that Dellutri did not issue unwarranted write-ups to non- African American employees.

48.     Plaintiff again requested time off as a mental health day due to the anxiety he was experiencing caused by the disparate treatment he was subjected to by Dellutri.

49.     Defendants failed to provide Plaintiff with any FMLA paperwork at the time he requested his mental health days and failed to tell Plaintiff that he was or may be entitled to FMLA leave.

50.     The discrimination Plaintiff endured by Defendants became so pervasive that he requested, and after approximately four (4) months of multiple requests, Defendants eventually granted Plaintiff's request and transferred him from the second shift to the third shift so that he would no longer have to interact with Supervisor Dellutri on a daily basis.

51.     Despite Plaintiff's high expectations of escaping Supervisor Dellutri's discriminatory, retaliatory, and hostile work environment by being transferred to the third shift, relief remained elusive. Supervisor Dellutri continued to discriminate and retaliate against Plaintiff by repeatedly inquiring about his job performance to his co-workers and by stating that Mr. Monroe was not a good employee.

52.     Once working the third shift, Defendants forced Mr. Monroe to work the shift alone. No other BHT working the third shift before Mr. Monroe was forced to work the shift alone.

53.   Additionally, once working the third shift, Plaintiff continued to work approximately 75 hours per week for both Corporate Defendants. Consequently, Defendants continued to underpay Plaintiff by $9.50 per hour for all hours worked over 40 in a workweek.

54.   Plaintiff lodged repeated complaints with the hope that the Defendants would intervene and halt the discriminatory treatment. Regrettably, the Defendants took no action.

55.     Rather, near the end of June 2023, Defendants terminated Plaintiff's employment.

56.     The Defendants stated that they terminated Plaintiff because he was allegedly sleeping on the job. However, Plaintiff contends that the Defendants' justification for the termination was pretextual because he never slept on the job and believes his employment termination was an act of discrimination and retaliation.

57.     Defendants failed to provide Plaintiff with any FMLA paperwork prior to his termination.

58.     In light of these circumstances, the Plaintiff was a victim of race and/or sex discrimination, retaliation, and harassment by the Defendants.

59.     The discriminatory conduct of the Defendants caused Plaintiff to suffer severe emotional distress and anxiety. Plaintiff has treated with a medical professional, since about

September 2022, due to his emotional distress caused by the discriminatory and wrongful conduct he was subjected to.

60.     All conditions precedent to bringing this action have occurred, been performed or been excused.

61.     The Plaintiff has retained the undersigned counsel in order that his rights and interests may be protected. The Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

## COUNT I:
## WAGE AND HOUR VIOLATION BY THE CORPORATE DEFENDANTS
## (OVERTIME)

62.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 30 and 52 - 55 above as if set out in full herein.

63.     This action is brought by Plaintiff and those similarly situated to recover from the Corporate Defendants unpaid overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorneys' fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 U.S.C. § 207. Section 207(a)(1) of the Act states: "No employer shall employ any of his employees . . . for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

64.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). The Corporate Defendants are and, at all times pertinent to this Complaint, were engaged in interstate commerce. At all times pertinent to this Complaint, the Corporate Defendants operated as organizations which market their services to customers from throughout the United States and also provide their services for goods sold and transported from across state lines of other

states, and the Corporate Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engage in interstate commerce, particularly with respect to their employees.

65.     Upon information and belief, the combined annual gross revenue of the Corporate Defendants was at all times material hereto in excess of $500,000 per annum, and/or Plaintiff and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

66.     By reason of the foregoing, the Corporate Defendants are and were, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 ® and 3(s) of the Act, and/or Plaintiff and those similarly situated were and/or are engaged in interstate commerce for the Corporate Defendants. The Corporate Defendants' business activities involve those to which the Act applies. The Corporate Defendants are an addiction treatment center and, through their business activity, affect interstate commerce. The Plaintiff's work for the Corporate Defendants likewise affected interstate commerce. Plaintiff was employed by the Corporate Defendants as a Behavioral Health Technician ("BHT") for the Corporate Defendants' business.

67.     Once Plaintiff began working at both the Detox Haven and Recovery Team, Plaintiff found himself working approximately 75 hours per workweek.

68.     The Corporate Defendants paid Plaintiff $19.00 per hour.

69.     However, Plaintiff did not receive one- and one-half times the regular rate of pay for all hours worked over 40 hours in a workweek.

70.     Accordingly, Plaintiff worked approximately an average of 35 hours per week, without being compensated at the rate of not less than one- and one-half times the regular rate at which he was employed, given that the Corporate Defendants did not pay the Plaintiff any overtime for the hours he worked over 40 in a workweek.

71.     Plaintiff was employed by the Corporate Defendants for approximately 52 compensable weeks under the Act, from June 2022 to June 2023.

72.     Plaintiff was employed as a BHT, performing the same orsimilar duties as that of those other similarly situated Behavioral Health Technicians whom Plaintiff has observed working in excess of 40 hours per week without overtime compensation.

73.     During all relevant times, Plaintiff recorded his time by utilizing Defendants' clock-in and clock-out system to document his work hours.

74.     The Corporate Defendants did not properly compensate Plaintiff for hours he worked in excess of 40 hours per week.

75.     Plaintiff seeks to recover unpaid overtime wages accumulated from the date of hire and/or from 3 years preceding the date of the filing of this Complaint.

76.     Prior to the completion of discovery and to the best of Plaintiff's knowledge, at the time of the filing of this Complaint, Plaintiff's good faith estimate of his unpaid overtime wages is as follows:

| | |
|---|---|
| START DATE FOR COMPENSABLE WEEKS | June 1, 2022 |
| END DATE FOR COMPENSABLE WEEKS | June 2023 |
| TOTAL COMPENSABLE WEEKS | 56 |
| HOURLY RATE | $19.00 |
| WEEKLY HOURS WORKED | 75 |
| OVERTIME RATE | $9.50 |
| WEEKLY OT HOURS WORKED | 35 |

| START DATE FOR COMPENSABLE WEEKS | June 1, 2022 |
|---|---|
| OVERTIME (ACTUAL DAMAGES) | $17,290.00 |
| OVERTIME (LIQUIDATED DAMAGES) | $17,290.00 |
| TOTAL DAMAGES | $34,580.00 plus attorney's fees and costs |

77.    At all times material hereto, the Corporate Defendants has failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Plaintiff and those similarly situated performed services and work in excess of the maximum hours provided by the Act, but no provision has been made by the Corporate Defendants to properly pay them at the rate of time-and-one-half for all hours worked in excess of forty hours (40) per workweek as provided in the Act. The additional persons who may become Plaintiffs in this action are weekly-paid employees and/orformer employees of the Corporate Defendants who are and who were subject to the unlawful payroll practices and procedures of the Corporate Defendants and were not paid time and one half of their regular rate of pay for all overtime hours worked in excess of forty.

78.    The Corporate Defendants knew and/or showed reckless disregard for the provisions of the Act concerning the payment of overtime wages and remain owing Plaintiff and those similarly situated these overtime wages since the commencement of Plaintiff's and those similarly situated employees' employment with the Corporate Defendants as set forth above, and Plaintiff and those similarly situated are entitled to recover double damages. The Corporate Defendants never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

79.    Throughout Plaintiff's employment with the Corporate Defendants, the Corporate Defendants willfully and intentionally refused to pay Plaintiff overtime wages as required by the laws of the United States and remain owing Plaintiff these overtime wages as set forth above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

a. Enter judgment for Plaintiff and others similarly situated and against the Corporate Defendants on the basis of the Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

b. Award Plaintiff actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

c. Award Plaintiff an equal amount in double damages/liquidated damages; and

d. Award Plaintiff reasonable attorneys' fees and costs of suit; and

e. Grant such other and further relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiff and those similarly situated demand trial by jury of all issues so triable as of right.

## COUNT II:
## WAGE AND HOUR VIOLATION AGAINST THE INDIVIDUAL DEFENDANT (OVERTIME)

80.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 30 and 52 – 55 above as if set out in full herein.

81.     At the times mentioned, the Individual Defendant was, and is now an owner or officer of the Corporate Defendants. The Individual Defendant is an employer of Plaintiff within the meaning of Section 3(d) of the Act in that the Individual Defendant acted directly in the interest of the Corporate Defendants in relation to their employees, including Plaintiff. The Individual Defendant had operational control of the business and is jointly and severally liable for Plaintiff's damages.

82.     The Individual Defendant was and is, at all times relevant, a person in control of the Corporate Defendants' financial affairs and could cause the Corporate Defendants to compensate (or not to compensate) their employees in accordance with the Act.

83.     Throughout Plaintiff's employment with the Individual Defendant, the Individual Defendant willfully and intentionally caused Plaintiff not to receive overtime compensation as required by the laws of the United States as set forth above and remains owing Plaintiff these overtime wages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

a.   Enter judgment for Plaintiff, and others similarly situated, and against the Individual Defendant on the basis of Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

b.   Award Plaintiff actual damages in the amount shown to be due for unpaid wages, with interest plus reimbursement of expenses; and

c.   Award Plaintiff an equal amount in double damages/liquidated damages; and

d.   Award Plaintiff reasonable attorneys' fees and costs of suit; and

e.   Grant such other and further relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiff and those similarly situated demand trial by jury of all issues so triable as of right.

## COUNT III:
## FEDERAL STATUTORY VIOLATION PURSUANT TO 29 U.S.C. 215 (a)(3)
## AGAINST THE CORPORATE DEFENDANTS (RETALIATORY DISCHARGE)

84.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 30 and 52 - 55 above as if set out in full herein.

85.     The Corporate Defendants willfully and intentionally refused to pay Plaintiff his legally owed overtime wages as required by the laws of the United States and remain owing Plaintiff these wages as set forth above.

86.     Section 206(a)(3) of the Act states that it shall be unlawful for any person "to discharge or in any manner discriminate against any employee because such employee has filed

any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in such proceeding . . . ."

87.     From during or around June 2022 through June 2023, Plaintiff complained about his unpaid overtime wages to the Corporate Defendants.

88.     On or about June 2023, Plaintiff was terminated.

89.     The motivating factor, which caused Plaintiff's discharge as described above, was the complaint seeking the payment of overtime wages from the Corporate Defendants. In other words, Plaintiff would not have been fired but for his complaint about unpaid overtime wages.

90.     The Corporate Defendants' termination of Plaintiff was in direct violation of 29 U.S.C. § 215(a)(3) and, as a direct result, Plaintiff has been damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter a judgment against the Corporate Defendants for all back wages from the date of discharge to the present date and an equal amount of back wages as liquidated damages, attorneys' fees, costs; and

b. Order reinstatement and promotion and injunctive relief prohibiting the Corporate Defendants from discriminating in the manner described above, emotional distress and humiliation, and pain and suffering, front wages, as well as other damages recoverable by law under 29 U.S.C. § 216(b).

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

## COUNT IV: 42 U.S.C.A. § 1981 - RACE DISCRIMINATION (DISPARATE TREATMENT)

91.     The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 61 of this Complaint.

92.     The Plaintiff is a member of a protected class of darker complexioned, African

American citizens.

93.     At all times relevant, the Plaintiff was in a contractual relationship with Defendants, within the meaning of 42 U.S.C.A. § 1981, as amended.

94.     During the course of the Plaintiff's employment, the Defendants violated the Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-African American citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

95.     During the course of the Plaintiff's employment with The Defendants, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-African American employees of the Defendant.

96.     The Defendant's treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-African American citizens, in violation of 42 U.S.C.A. § 1981, as amended.

97.     The Defendant' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61, denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-African American citizens, in violation of 42 U.S.C.A. § 1981, as amended.

98.     Through their actions and treatment of the Plaintiff, the Defendant intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

99.     During the course of the Plaintiff's employment with The Defendants, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61 of this Complaint.

100.    The Defendants, at all times, had knowledge of the discriminatory acts and conduct of its managers, supervisors and other employees, and of all other discriminatory actions described in paragraphs 13 – 15, 19 – 24, and 31 - 61 above.

101.    Despite The Defendants' knowledge of the ongoing discrimination, it failed to take remedial action.

102.    Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

103.    As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

104.    The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Enter judgment in the Plaintiff's favor and against the Defendant for their violations of 42 U.S.C.A. § 1981, as amended;

b.  Award the Plaintiff actual damages suffered;

c.  Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d.  Award the Plaintiff prejudgment interest on his damages award;

e.  Award the Plaintiff punitive damages;

f.  Enjoin the Defendant, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g.  Award the Plaintiff reasonable costs and attorneys' fees; and

h.   Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT V:
## 42 U.S.C.A. § 1981 - RACE DISCRIMINATION (RETALIATION)

105. The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 61 of this Complaint.

106.  The Plaintiff is a member of a protected class of African American citizens.

107.  At all times relevant, the Plaintiff was in a contractual relationship with The Defendants was within the meaning of 42 U.S.C.A. § 1981, as amended.

108.  During the course of the Plaintiff's employment with The Defendants, the Defendant have violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-African American employees, in violation of 42 U.S.C.A. § 1981(b), as amended.

109.  During the course of the Plaintiff's employment with The Defendants, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non- African American employees of the Defendant.

110.  The Defendant' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-African American employees, in violation of 42 U.S.C.A. § 1981, as amended.

111.  The Defendant' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61 denied the Plaintiff the right to

make and enforce contracts as enjoyed by Caucasian or non-African American employees, in violation of 42 U.S.C.A. § 1981, as amended.

112. Through their actions and treatment of the Plaintiff, the Defendant intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

113. Despite The Defendants' knowledge of the ongoing discrimination, it failed to take remedial action.

114. Plaintiff complained about race discrimination.

115. In response, the Defendant terminated Plaintiff's employment.

116. Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

117. As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

118. The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Enter judgment in the Plaintiff's favor and against the Defendant for their violations of 42 U.S.C.A. § 1981, as amended;

b. Award the Plaintiff actual damages suffered;

c. Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d. Award the Plaintiff prejudgment interest on his damages award;

e. Award Plaintiff punitive damages;

f. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g. Award the Plaintiff reasonable costs and attorneys' fees; and

h.  Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT VI: 42 U.S.C.A. § 1981 –**
**RACE DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**

119. The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 61 of this Complaint.

120.  The Plaintiff is a member of a protected class of African American citizens.

121. At all times relevant, the Plaintiff was in a contractual relationship with the Defendants within the meaning of 42 U.S.C.A. § 1981, as amended.

122.  During the course of the Plaintiff's employment with The Defendants, the Defendants have violated the Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-African American, in violation of 42 U.S.C.A. § 1981(b), as amended.

123.  During the course of the Plaintiff's employment with the Defendants, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-African American employees of the Defendants.

124.  The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-African American, in violation of 42 U.S.C.A. § 1981, as amended.

125. The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61, denied the Plaintiff the right to

make and enforce contracts as enjoyed by Caucasian or non-African American employees, in violation of 42 U.S.C.A. § 1981, as amended.

126. Through their actions and treatment of the Plaintiff, the Defendants intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

127. During the course of the Plaintiff's employment with the Defendants, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race, as more fully described in paragraphs 13 – 15, 19 – 24, and 31 - 61 of this Complaint.

128. The Defendants, at all times, had knowledge of the discriminatory acts and conduct of its managers, supervisors, employees and of all other discriminatory actions described in paragraphs 13 – 15, 19 – 24, and 31 - 61 above.

129. Despite The Defendants' knowledge of the ongoing discrimination, it failed to take remedial action.

130. Defendants knowingly and willfully violated the law. Defendants acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

131. As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

132. The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Enter judgment in the Plaintiff's favor and against the Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

b. Award the Plaintiff actual damages suffered;

c. Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d. Award the Plaintiff prejudgment interest on his damages award;

e. Award the Plaintiff punitive damages;

f. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g. Award the Plaintiff reasonable costs and attorneys' fees; and

h. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT VII: FMLA INTERFERENCE

132.     The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 61 of this Complaint.

133.     At all times material, Plaintiff was employed by Defendants and an "eligible employee" entitled to leave under the FMLA.

134.     At all times material, Defendant was an "employer" as defined by 29 U.S.C.§ 2611(4).

135.     Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

136.     Plaintiff worked for Defendants for at least 12 months before the date any FMLA leave was to begin.

137.     Plaintiff worked for Defendants for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

138.     Plaintiff was entitled to FMLA leave because he had an FMLA-qualifying reason. Specifically, Plaintiff had a serious health condition that prevented Plaintiff from performing the functions of his job.

139.    Plaintiff's work environment caused him to suffer severe emotional distress, anxiety, and depression.

140.    At all times material, Plaintiff gave proper notice to Defendant by informing Defendant of his qualifying reason.

141.    Plaintiff informed Defendants of his severe emotional distress, anxiety, and depression and resulting need to take leave to seek medical care and treatment.

142.    Defendants failed to provide Plaintiff with any FMLA paperwork and failed to advise Plaintiff of his right to take leave under the FMLA.

143.    Plaintiff took leave to care for his his severe emotional distress, anxiety, and depression.

144.    Plaintiff gave proper notice to Defendants by informing them of his his severe emotional distress, anxiety, and depression. Plaintiff provided enough information for Defendants to know that his leave may be covered by the FMLA.

145.    Plaintiff communicated with Defendants regarding his inability to work due to his his severe emotional distress, anxiety, and depression.

146.    Consequently, Defendants were aware that Plaintiff was unable to work because of his severe emotional distress, anxiety, and depression.

147.    Despite their knowledge of Plaintiff's medical condition, Defendants failed to notify Plaintiff of his eligibility status and rights under the FMLA and failed to notify Plaintiff whether his leave was or could be designated as FMLA leave.

148.    Instead of informing Plaintiff of his rights, Defendants terminated Plaintiff. Defendants interfered with Plaintiff FMLA's rights in three different occasions: (a) when

Defendants failed to provide Plaintiff with FMLA paperwork; (b) when Defendants failed to inform Plaintiff of his FMLA rights; (c) and when Defendants terminated Plaintiff.

149.    Defendants interfered with Plaintiff's rights to take leave under the FMLA and denied him the benefits to which he was entitled.

150.    As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against Defendants for their violations of the FMLA;

b.  Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c.  Award Plaintiff liquidated damages based on Defendants' conduct;

d.  Award Plaintiff prejudgment interest on any damages award;

e.  Award Plaintiff reasonable costs and attorney's fees;

f.  Award Plaintiff any further relief pursuant to the FMLA; and,

g.  Grant Plaintiff such other and further relief, as deemed equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

### COUNT VIII- VIOLATION OF THE FMLA – RETALIATION

151.    The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 61 of this Complaint.

152.    At all times material, Defendant was an "employer" as defined by 29 U.S.C.§ 2611(4).

153.     Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

154.     Plaintiff worked for Defendants for at least 12 months before the date any FMLA leave was to begin.

155.     Plaintiff worked for Defendants for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

156.     Plaintiff was entitled to FMLA leave because he had an FMLA-qualifying reason.

157.     Specifically, Plaintiff's severe emotional distress, anxiety, and depression was a qualifying FMLA medical condition was sufficiently severe that Plaintiff was eligible to take leave pursuant to the FMLA. Plaintiff's serious health condition prevented Plaintiff from performing the functions of his job.

158.     Plaintiff provided enough information for Defendants to know that his leave may be covered by the FMLA.

159.     Defendants terminated Plaintiff shortly after he took leave, which should have been designated as FMLA leave, or because he attempted to take FMLA leave.

160.     Alternatively, the fact that Plaintiff took leave, which should have been designated as FMLA leave, or because he attempted to take FMLA leave, was a motivating factor that caused Plaintiff's termination.

161.     As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendants for their violations of the FMLA;

b. Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c. Award Plaintiff liquidated damages based on Defendants' conduct;

d. Order reinstatement;

e. Award Plaintiff prejudgment interest on any damages award;

f. Award Plaintiff reasonable costs and attorney's fees;

g. Award Plaintiff any further relief pursuant to the FMLA; and,

h. Grant Plaintiff such other and further relief, as deemed equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues so triable as of right.

Dated: <u>April 25, 2024</u>.

Respectfully submitted,

By: **<u>/s/ Tanesha W. Blye</u>**
Tanesha Walls Blye, Esq.
Fla. Bar No.:  738158
Email: attorneyblye@lawyerofjustice.com
LAW OFFICES OF T. WALLS BLYE
66 West Flagler Street, Ste. 900
Miami, Florida 33130
Tel: 786.796.1814 or 786.258.8114

*Trial Counsel for Plaintiff*